[874 NYS2d 466]

In the Matter of JOEL A. SILBERMAN (Admitted as JOEL ALAN SILBERMAN), a Disbarred Attorney, Petitioner. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Respondent.

First Department, March 10, 2009

## APPEARANCES OF COUNSEL

*Richard M. Maltz* for petitioner.

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Stephen P. McGoldrick* of counsel), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Petitioner was admitted to the practice of law in the State of New York by the Second Judicial Department on September 24, 1986, and at all times relevant to these proceedings he maintained his principal place of business within this Judicial Department.

On November 9, 2004, petitioner pleaded guilty to criminal sale of a controlled substance in the third degree in violation of Penal Law § 220.39 (1), a class B felony, and agreed to participate in the ASPIRE (Alternative Sentencing Pre-Indictment Rehabilitation Effort) program with the understanding that if he successfully completed the program and had not been rearrested, he would be allowed to withdraw his felony plea, plead guilty to a class A misdemeanor, and a sentence of time served would be imposed.

By order entered May 11, 2006, this Court struck petitioner's name from the roll of attorneys based on automatic disbarment as a result of his conviction of a felony as defined by Judiciary Law § 90 (4) (e) (*Matter of Silberman*, 31 AD3d 21 [2006]). We specifically rejected petitioner's request to defer a final sanction until he completed the drug treatment program, stating in pertinent part, that the Judiciary Law "is self-executing" and, "[s]hould respondent replead to a misdemeanor, he may petition this Court to vacate the order of disbarment" (31 AD3d at 22-23).

Petitioner successfully completed the ASPIRE program in 2006, including completion of Daytop Village's six-month residential drug treatment program; intensive outpatient treatment for one year; completion of community service; the securing of full time employment; living in housing approved by the Office of Special Narcotics; and weekly drug testing, and received excellent evaluations from the staff and program managers. Petitioner avers that he has not used drugs since his March 2004 arrest.

On November 2, 2006, petitioner pleaded guilty to criminal possession of a controlled substance in the seventh degree in violation of Penal Law § 220.03, a class A misdemeanor, and received a sentence of time served. Thereafter, on November 6, 2006, in accordance with his plea agreement, New York County Supreme Court vacated petitioner's felony conviction and dismissed all pending criminal charges against him.

Now that his felony conviction has been dismissed and replaced by a misdemeanor conviction, petitioner moves pursu-

ant to Judiciary Law § 90 (5) (a) for an order: (1) vacating this Court's previous disbarment order entered May 11, 2006; (2) reinstating him to the practice of law without further proceedings; and (3) deeming his removal from the bar as a suspension nunc pro tunc to November 9, 2004 (date of conviction), since he has now effectively been out of the practice of law for almost four years for a misdemeanor conviction (*see Matter of Hecht*, 253 AD2d 98 [1999] [by the time final sanction of a one year suspension was determined in this noncriminal case, attorney already suspended for two years, thus, Court imposed suspension nunc pro tunc to interim suspension and reinstated attorney without further proceedings]; *see also Matter of Levin*, 261 AD2d 74 [1999] [three year suspension imposed nunc pro tunc to interim suspension and immediately reinstated]). Petitioner, who has also been in the restaurant business since his graduation from law school in 1985, states that, since the reduction of his conviction to a misdemeanor, he has been actively involved in opening a new gourmet sandwich shop and he has not practiced law since his November 2004 guilty plea.

Although it concedes that petitioner's disbarment order should be vacated pursuant to Judiciary Law § 90 (5), the Departmental Disciplinary Committee cross-moves for an order: (1) immediately suspending petitioner from the practice of law pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) based upon substantial admissions made under oath (referring to his plea allocution) and other uncontested evidence of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (a) (3) (illegal conduct that adversely reflect on petitioner's honesty, trustworthiness or fitness as a lawyer) and (7) (conduct that adversely reflects on petitioner's fitness as a lawyer) (22 NYCRR 1200.3); and (2) referring the matter to the Committee for the commencement of a disciplinary proceeding based upon a formal statement of charges, which will allow the issues surrounding his misconduct to be more fully addressed.

In opposition to petitioner's motion and in support of its cross motion the Committee argues, inter alia, that petitioner may still be disbarred for his conduct regardless of the fact that he was convicted of the misdemeanor of criminal possession of a controlled substance in the seventh degree. It contends that, at a deposition in May 2007 (taken in anticipation of petitioner's current motion), petitioner "recanted" his plea admission that he sold drugs and, therefore, testified inconsistently to his plea

allocution; and he testified that he *thought* about practicing law before the order of disbarment was issued (but never did).

In reply, petitioner disputes the Committee's allegations regarding his alleged recantation and his consideration of possibly practicing law after his original conviction but before his formal disbarment and argues, in essence, that, in light of his impressive record after his original conviction, he should be rewarded for his hard work and rehabilitation by permitting his four year de facto suspension to act as appropriate discipline in this case and that he be immediately reinstated to the practice of law. In the alternative, if this Court is uncertain as to the appropriate sanction on the record before it, petitioner requests the matter be remanded strictly for a mitigation/sanction hearing (*not* formal charges) before a Hearing Panel. By contrast, if the Committee's cross motion is granted and formal charges and a formal hearing process are permitted to go forward, petitioner contends that he could arguably be suspended in a year or more from now, and then he would have to move for reinstatement, which could take another year or so, resulting in a possible suspension of eight years for a misdemeanor conviction, which would be unfair for a rehabilitated lawyer who has done everything asked of him to make himself fit to again practice law.

Ordinarily, where a misdemeanor conviction is deemed a "serious crime," an interim suspension is imposed, and the matter is remanded for a hearing on the appropriate sanction to impose for the "serious crime" (*see Matter of Biaggi*, 170 AD2d 139 [1991]); however, in at least two cases cited by petitioner the Committee has not sought to suspend attorneys convicted of drug related misdemeanors pending consideration of the charges against them (*see Matter of Keiser*, 304 AD2d 96 [2003] [where this Court accepted Hearing Panel's recommendation of a four year suspension retroactive to date that respondent, who had been convicted of several misdemeanor drug offenses in Massachusetts, voluntarily suspended himself from the practice of law]; *Matter of Hildebrand*, 221 AD2d 85 [1996] [Hearing Panel sustained charges that attorney engaged in an illegal act involving moral turpitude and conduct adversely reflecting on his fitness to practice law where attorney was convicted of same misdemeanor charge as instant petitioner and also failed to disclose conviction to appropriate bar authorities]).

In this case, petitioner's misdemeanor conviction under Penal Law § 220.03 does not meet the definition of a "serious crime"

as set forth in Judiciary Law § 90 (4) (d).* Nevertheless, under the present circumstances, we find the Committee's cross motion for an interim suspension, followed by the possible filing of formal charges for petitioner's underlying criminal conduct, to be appropriate. Moreover, given the procedural posture of this matter and the interests of judicial economy, the Committee would not oppose referral of the matter directly to a Hearing Panel for a hearing on formal charges, thereby bypassing a referee's hearing. As the Committee points out, Hearing Panels frequently serve as the initial factfinders in "serious crime" and reinstatement matters and, since this matter involves issues akin to those frequently raised in those proceedings, a Hearing Panel would be capable of reviewing the facts of the case and making recommendations as to a final sanction.

In *Matter of Biaggi (supra)*, where the disbarred attorney's conviction on federal bribery and mail fraud counts, which led to his automatic disbarment, was dismissed on appeal, and the matter remanded for resentencing on two counts of filing a false tax return, the respondent conceded that the tax perjury charges, which had no New York felony analog, were nevertheless "serious crimes" warranting interim suspension from practice pending consideration of disciplinary proceedings in this Court, but asked that a hearing be held to reconsider the appropriate sanction for such a serious crime, as well as to entertain a petition for reinstatement in light of the fact that he had been already effectively barred from practice for 2½ years since his conviction. This Court vacated its previous order of disbarment, but since under the statute, the "serious crime" hearing (Judiciary Law § 90 [4] [h]) serves a function different from the reinstatement hearing (§ 90 [5]), it declined to mandate such a dual assignment to the Hearing Panel. In so ruling, the Court stated, in pertinent part: "[T]he Hearing Panel may wish to fashion an additional recommendation in its report for appropriate relief in light of the punishment respondent has already absorbed (*see, Matter of Kuba*, 162 AD2d 30)" (*id.* at 141). Thereafter, upon remand, the Hearing Panel recommended that the appropriate sanction be suspension limited to the period of time already served under our prior order, which recommenda-

---

\* Judiciary Law § 90 (4) (d) defines a "serious crime" as

"any criminal offense . . . a necessary element of which, as determined by statutory or common law definition of such crime, includes interference with the administration of justice, false swearing, misrepresentation, fraud, willful failure to file income tax returns, deceit, bribery, extortion, misappropriation, theft, or an attempt or conspiracy or solicitation of another to commit a serious crime."

tion was adopted and respondent was reinstated, effective immediately (*see Matter of Biaggi*, 178 AD2d 74 [1992]).

Accordingly, as we stated in *Matter of Biaggi* (*supra*), although the Hearing Panel may wish to fashion an additional recommendation in its report for appropriate relief in light of the present posture of this matter, the Committee's cross motion should be granted, the matter remanded for hearing, report and recommendation of an appropriate sanction on whatever charges the Committee may deem appropriate to bring against petitioner and petitioner suspended from the practice of law, effective immediately, pending our review and decision on that recommendation. Petitioner's motion should be granted only to the extent of vacating our order of disbarment, entered May 11, 2006.

TOM, J.P., MAZZARELLI, ANDRIAS, McGUIRE and ACOSTA, JJ., concur.

The order of disbarment entered on May 11, 2006 vacated; petitioner suspended from the practice of law in the State of New York, effective the date hereof, and matter remanded to a Committee to designate a Hearing Panel to conduct a hearing, as indicated.